Ramón Aguilar, Petitioner and Appellant, *v.* The People of Puerto Rico, Respondent and Appellee.

No. 7202.  Argued January 28, 1936.—Decided March 13, 1936.

*Gelpí & Gelpí* for appellant.  *R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an appeal taken from a decision in a *habeas corpus* proceeding.

Ramón Aguilar, who was kept in custody by order of the District Attorney of Mayagüez to answer for the killing of José Abraham Torres, applied to Judge Foote of the district court, alleging that he was kept imprisoned without probable cause, and praying that his release be decreed after an investigation of the matter.

The judge ordered the issuance of the writ, and at the hearing the district attorney introduced in evidence, among other things, a sworn statement made in *articulo mortis* by José Abraham Torres at the preliminary investigation.  The petitioner objected to its admission but the court overruled the objection, and finally discharged the writ issued because in the opinion of the court there was sufficient cause for the arrest.

Feeling aggrieved by that decision, the petitioner appealed to this Supreme Court. In his brief he maintains that the district court erred: in admitting in evidence a supposed dying declaration; in denying his motion to strike such declaration from the record; and in ruling that probable cause for the arrest had been shown.

We think that said dying declaration, together with other evidence introduced by the district attorney, sufficiently justifies the conduct of that official. The dying man testified that he had had a quarrel with the defendant on account of a certain "boundary line of some lands owned by him"; that on the night in question he was at Guanajibo, in a property belonging to the Morales Succession and that he heard some shots; that he got up and when he came out into the yard, the defendant shot and wounded him, and that he was able to recognize the defendant with the flashlight that he carried with him.

This being so, the only question to be considered and decided by us and the only one that really gave rise to the appeal is whether or not dying declarations are admissible in Puerto Rico.

The appellant admits that it has been the custom of our courts for many years to admit such declarations, but he maintains that the question he now raises has never been properly submitted to this Supreme Court. He alleges that as such a practice is contrary to the constitutional provision which guarantees the defendant's right to be confronted with the witnesses against him, and as there is no express provision in our codes which would authorize said dying declarations, and as the Common Law of England is not in force in this island, said practice should be held to be illegal.

We do not agree. The fact that our laws contain no specific authorization as do those enacted in California—from which state our laws on the matter are said to have been adopted—concerning the admissibility of such declarations,

is not conclusive. It is sufficient that they provide, as do subdivisions 1 and 13, of section 35 of the Law of Evidence, that:

"In conformity with the preceding provisions, evidence of the following facts may be given upon a trial:

"1. The precise fact in dispute.

.     .     .     .     .     .     .     .     .     .

"13. Any other facts from which the facts in issue are presumed or are logically inferable."

And we say that it is sufficient, because from time immemorial, within the system established in Puerto Rico as a whole by the adoption of the new Penal Code and the new Code of Criminal Procedure as well as by the new Law of Evidence, it has repeatedly been held that dying declarations are admissible in cases of murder or manslaughter as direct evidence of the death and the way in which it was caused, that is, of the real fact involved. This practice has openly been followed in this island for over thirty years with the approval of this court and with the knowledge of the Insular Legislature.

In the case of *People* v. *Díaz*, 35 P.R.R. 580, this court speaking through Mr. Justice Aldrey said:

"The appellant does not assign error on the ground that it was not shown that when José Antonio Rodríguez made the statements attributed to him by the witnesses he knew that his death was imminent, but on the ground that such evidence is inadmissible. But the admissibility of dying declarations in criminal cases has been sustained by this court in the cases of *People* v. *Morales, alias Yare Yare,* 14 P.R.R. 227, *People* v. *Barrios,* 23 P.R.R. 772, and others, the reason therefor being clearly explained in Wharton's Criminal Evidence, vol. 1, page 540."

In *People* v. *Barrios,* 23 P.R.R. 772, Mr. Justice Wolf said:

"The second assignment of error relates to the admission of a dying declaration. The appellant in his brief seems to rely principally on the fact that there was other proof tending to show the same matters set up in the said declaration. The court has some discretion in the admission of cumulative evidence, but a dying de-

claration should never be excluded merely because there is other direct evidence. The necessity for such declarations to which the decisions refer, relates to the fact that evidence of the particular person, the dying man, is not otherwise obtainable and does not depend on whether other witnesses may give the same testimony or a part thereof. *People* v. *Fong Ah Sing*, 64 Cal. 253, 21 Pac. 233; 21 Cyc. 975. A dying declaration is part of the *res gestae* in regard to the admission of evidence and governed by similar principles.'' *People* v. *Barrios*, 23 P.R.R. 772, 775.

■ As to the claim that such practice is in conflict with the provision that secures to the accused his right to be confronted with any witnesses against him, it will suffice to quote from the decision of the Supreme Court of the United States in *Mattox* v. *United States*, 156 U. S. 237, 242, as follows:

''The primary object of the constitutional provision in question was to prevent depositions or *ex parte affidavits*, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards even by the death of the witness; and that, if notes of his testimony are permitted to be read, he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. To say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot free simply because death has closed the mouth of that witness, would be carrying his constitutional protection to an unwarrantable extent. The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.

"We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a British subject —such as his ancestors had inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a Bill of Rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant. For instance, there could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations. They are rarely made in the presence of the accused; they are made without any opportunity for examination or cross-examination; nor is the witness brought face to face with the jury; yet from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility. They are admitted not in conformity with any general rule regarding the admission of testimony, but as an exception to such rules, simply from the necessities of the case, and to prevent a manifest failure of justice. As was said by the Chief Justice when this case was here upon the first writ of error, (146 U. S. 140, 152), the sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath. If such declarations are admitted, because made by a person then dead, under circumstances which give his statements the same weight as if made under oath, there is equal if not greater reason for admitting testimony of his statements which were made under oath."

The order appealed from should be affirmed.

Mr. Justice Wolf concurs in the result.

Mr. Justice Córdova Dávila took no part in the decision of this case.